UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

CRIMINAL CASE NO: 5:25-CR-00090-KKC-EBA

UNITED STATES OF AMERICA PLAINTIFF

v.

JOEL SANCHEZ MENDOZA DEFENDANT

# DEFENDANT'S SENTENCING MEMORANDUM

Comes the Defendant, Joel Sanchez Mendoza, by counsel, and submits the following as his sentencing memorandum. This sentencing memorandum is submitted pursuant to 18 U.S.C. § 3553(a), which requires the Court to consider the history and characteristics of Joel Sanchez and the nature and circumstances of his offense in order to fashion a sentence that is sufficient, but not greater than necessary to comply with the goals set forth in the statute.

## BACKGROUND

Joel was born in Mexico in 1987. His parents made two mistakes that put Joel in a compromising position before he became an adult. First, rather than immigrating to the United States while they were pregnant, Joel's parents brought him to the United States when he was baby, ensuring that he would not reap the benefit of birthright citizenship. Second, Joel's parents never made any attempt to naturalize themselves or Joel. When Joel turned eighteen, he became

an illegal alien. Joel should have sought citizenship or other legal status for himself once he became an adult, but he had juvenile convictions, no money, and no idea how to begin the process.

Joel assumed the name Luis Morales in 2016 to avoid deportation. He was arrested and gave the name and identifying information of Mr. Morales, which avoided him being flagged by Homeland Security. In 2017, Probation was aware of the real Luis Morales's NCIC profile, but no one put the pieces together to discover Joel's identity theft. Because the information indicated that "Luis" was born in Puerto Rico, it was assumed that Joel was a citizen of the United States. Joel served his federal sentence, went to a halfway house, got a job, got married, and had a child, all while living under the name Luis. Joel maintained throughout the trial, and still maintains, that he was unaware of the existence of the real Luis Morales until 2025, when Probation Officer Michael Raccuia disclosed his information to Joel in an email. When Joel purchased the false identity, he was not given any specific information about the fake identity and was simply told that it would work for him. Joel originally did not know whether the name and social security number belonged to a real person or whether it was fake information, but the longer he used it without any issues, the more he came to believe that there was no real person using the same identifying information. He assumed that if there was a real Luis Morales out in the world, he would eventually discover that someone was using his name. The real Luis eventually did discover that someone else was filing taxes in his name when he applied for benefits in 2023, but Luis's existence was not confirmed to Joel until 2025.

Joel proceeded to trial in this case on October 20, 2025. Just three days prior to the trial, the government indicted Joel and a superseding indictment was issued adding two additional counts. (Superseding Indictment, DE #34). Despite having only the weekend to review the additional discovery and prepare new defenses, Joel elected to proceed with the trial as scheduled.

The trial ended in a mistrial, after government witnesses violated the sequestration order and discussed their testimony during the lunch break. Joel requested remedies including a dismissal of the indictment and exclusion of the witnesses, which was denied. (Order and Opinion, DE #58). During the time between the first and second trials, additional investigation was completed, and additional discovery was provided to shore up the government's case. Joel was acquitted on count 1 and convicted on counts 2-5. (Verdict, DE #78).

A DOWNWARD VARIANCE IS WARRANTED

Despite his ongoing identity theft, Joel lived a better, more productive life while living under the name Luis. He served his federal time without incident, was released to the halfway house, and immediately started putting his life back together. He never failed a drug test or received any other serious sanctions during his time in community confinement. He applied for and was accepted to work at McLane transportation in their warehouse. He obtained his forklift certification and immediately began working his way up in the company. McLane was so impressed with him that they offered to pay for his Commercial Driver training, which he completed. He passed the tests, received his CDL and was promoted to driver. During this time, he met his wife, Megan Slone, and two children together. Joel was making more money than he ever had and was finally realizing the American dream that he had always been chasing. Despite his incarceration, and even after learning of his false identity, Megan has stayed by his side, and describes him as a loving husband and father. Joel has watched his son grow up through video calls. (Character Letter, Exhibit A).

Officer Raccuia discovered Joel's false identity in 2025, and informed Joel that there was another Luis Morales living in Ohio with the same date of birth and social security number. Joel

stood up before the Magistrate Judge in early 2025 and admitted, for the first time in seven years, that Luis was not his real name. He was charged with two supervised release violations: 1) false statement to obtain a controlled substance, a Grade A violation; and 2) false statement to his probation officer, a Grade C violation. The guideline range of 24-30 months was driven by the controlled substance violation. (Revocation Judgment, 17-CR-40, DE #220). At that supervised release hearing, the government argued that Joel deserved a high-end sentence because, at his previous Federal sentencing, the court was not aware of his criminal history and therefore miscalculated his guidelines range. (Revocation Transcript, DE #223, Page ID #2024). His guideline range at his sentencing was 130-147 months (70-87 months for possession with intent to distribute cocaine, plus a 60-month mandatory consecutive term for count 4, possession of a firearm in furtherance of drug trafficking). If his criminal history had been calculated properly, he would have been a category III rather than a category I, and his guidelines range would have been 147-168, a 17-month difference on the low-end from the incorrectly calculated guidelines range. At his sentencing in 2020, he was granted a significant downward variance on Counts 2-3 to a time-served sentence of 42 months, 18 days. With the mandatory 60 months for count 4, his total sentence was 102 months, 18 days, a 28-month downward variance from the bottom of the guidelines range. The court stated that the reason for the variance was that Mr. Sanchez had "done very well in prison… I believe you have the talent and ability to turn things around," and that, due to the COVID-19 pandemic, Mr. Sanchez had been "housed recently under difficult circumstances at the local jail. That's always tough. For that reason I am going to vary downward." (Sentencing Transcript, 5:17-CR-40, DE #219, Page ID #1983). It is possible that Joel would have received the same consideration if his guidelines range had been calculated correctly, but, even if his

sentence would have been roughly 17 months longer, his deception was taken into consideration at his subsequent supervised release hearing.

Joel stipulated to the two violations and received a top of the guidelines sentence of 30 months. (Violation Hearing Transcript, 5:17-CR-40. DE #223, Page ID #2024-2025). Joel was acquitted of this conduct at the subsequent trial. His dentist, Dr. Wilson, took the stand at his trial and testified that Joel received pain medication following a medical procedure for a severe tooth infection. (Trial Transcript Day 2, DE #85, Page ID #648). The dentist also testified that she regularly sees patients that are non-citizens and that she would never refuse treatment or medication to a patient based on their citizenship. *Id.* In closing, it was argued that, since Joel needed the pain medication, and would have received it whether he had used his false name or not, he did not obtain the controlled substance by deception. The jury apparently agreed and found Joel not guilty of Count 1. Joel did not contest this violation at his supervised release hearing in 2025 because he wanted to take responsibility for his use of a false identity. In hindsight, if Joel had contested the Grade A violation and stipulated the Grade C violation for false statements to Officer Raccuia, his violation guidelines range would have been 3-9 months rather than 24-30 months. U.S.S.G. §7B1.4(a). Assuming that Joel would have received a high-end sentence for the Grade C violation, Joel received an additional 21-months for conduct that he was later acquitted of.

Joel and the undersigned respectfully submit that the 30-month sentence he received for the supervised release violation is sufficient to encompass his false statements on his job applications and Commercial Driver's License applications. Joel requests that this sentence be run concurrently to the sentence imposed for his supervised release violation. The undersigned recognizes, however, that the 18 U.S.C. §1028A(b) requires a 24-month consecutive term of imprisonment. Therefore, the undersigned requests a sentence of 24 months for counts three and

five, concurrent to each other but consecutive to all other sentences. Further, the undersigned requests a one-day sentence for counts two and four, to run concurrently to each other.

A one-day sentence for the False Claim of Citizenship counts, counts two and four, is appropriate for several reasons. First, as to the nature of the offenses, Joel does not deny that his conduct was harmful. His poor decision to take on a false name should, however, be considered in context. Joel did not use the identity to steal money from Mr. Morales or to commit additional crimes. His purpose in using the false identity was to avoid deportation and secure employment. To the undersigned's knowledge, Mr. Morales did not experience any real monetary consequences because of the identity theft. He was not even aware that it was occurring for over five years. Although Joel was actively breaking the law by using this information, he secured steady employment, remained sober, and built a family. He largely overcame the issues of drug abuse and trafficking that plagued his youth. He had built a life for his family that was better than any he had ever had before. That life, however, was built on a lie. Joel knows that he has significant time left to serve and that, when he is released, he will be deported to Mexico.

Joel's imminent deportation is a significant punishment in and of itself. He only lived in Mexico as a baby; he has no memory of it whatsoever. His entire family, all his friends, and everyone he has ever known live in the United States. He has no known connections in Mexico, no job prospects, nowhere to live, and no idea how he will build a life there. He will be leaving his two young children and his wife Megan and will continue to be absent during their formative years. Due to his criminal history, it is unlikely that he will be granted permission to return. This deportation will have a significant deterrent effect not only on Joel, but on those who know Joel and become aware of his sentences.

Additionally, the false claim of citizenship counts, counts 2 and 4, are encompassed by the aggravated identity theft counts and are not distinct criminal acts. They stem from the exact same conduct: using a fake identity for employment. Specifically, Joel used a fake name to get the job and McLane and to get his commercial drivers license while employed at McLane. By using the name Luis Morales, he was simultaneously making a false claim of identity and citizenship. Moreover, counts 2 and 4 are elements of the aggravated identity theft counts.

As stated above, Joel has already received a substantial, roughly 21-month additional sentence for acquitted conduct. That supervised release sentence was at the high-end of the range due in large part to his incorrectly calculated criminal history score, which may have reduced his sentence on the underlying case. Joel has been punished substantially for his use of a fake name.

Therefore, for the reasons stated above, the undersigned respectfully suggests that a sentence of 24 months and one day is sufficient but not greater than necessary to comply with the goals set forth in 18 U.S.C. 3553(a).

Respectfully submitted,

/s/ NICHOLAS NASH
NASH · MARSHALL, PLLC
129 West Short Street
Lexington, Kentucky 40507
Telephone: (859) 254-3232
Fax: (859) 225-4746
E-mail: Nnash@nashmarshall.com
ATTORNEY FOR DEFENDANT

CERTIFICATE OF SERVICE

I hereby certify that on June 18, 2026, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system, which will send a notice of electronic filing to all parties in this matter or service was completed by first class mail to any non-CM/ECF participants.

/s/ NICHOLAS NASH